IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

JEROME GREER-EL, #185 535,      )
                                )
        Petitioner,             )
                                )
        v.                      ) CIVIL ACTION NO.: 3:10-CV-1055-TMH
                                )              [WO]
WARDEN C. WHEELER-WHITE,        )
*et al.*,                       )
        Respondents.            )


## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I. INTRODUCTION AND PROCEDURAL HISTORY

This cause is before the court on a 28 U.S.C. § 2254 petition for habeas corpus relief filed by Petitioner, a state inmate, on December 8, 2010.[1] In this petition, Petitioner challenges the convictions for shooting into an occupied dwelling and shooting into an unoccupied vehicle imposed upon him on April 25, 2005 by the Circuit Court for Macon County, Alabama.  The trial court sentenced Petitioner on May 25, 2005, to 21 years in prison on each conviction. The trial court directed the sentences to run concurrently.  (*Doc. No. 40*.)

On May 6, 2005 Petitioner filed a *pro se* motion for new trial. In support of his motion

---

[1]Although the present petition was stamped "filed" in this court on December 13, 2010, the petition was signed by Petitioner on December 8, 2010. A *pro se* inmate's petition is deemed filed the date it is delivered to prison officials for mailing. *Houston v. Lack,* 487 U.S. 266, 271-272 (1988); *Adams v. United States,* 173 F.3d 1339, 1340-41 (11th Cir. 1999); *Garvey v. Vaughn,* 993 F.2d 776, 780 (11th Cir. 1993). "Absent evidence to the contrary in the form of prison logs or other records, [this court] must assume that [the instant petition] was delivered to prison authorities the day [Greer-El] signed it . . ." *Washington v. United States,* 243 F.3d 1299, 1301 (11th Cir. 2001). In light of the foregoing, the court considers December 8, 2010, as the date of filing.

Petitioner alleged that the had been denied constitutionally effective assistance of counsel and that he had been compelled into self-representation. Following his sentencing proceeding on May 25, 2005, Petitioner filed an appeal of his convictions and sentence.[2] He alleged on appeal that he did not knowingly and intelligently waive his constitutional right to counsel by asserting a clear and unequivocal right to self representation, and that trial counsel rendered ineffective assistance by failing to assist in Petitioner's defense prior to withdrawing.

On February 24, 2006, the Alabama Court of Criminal Appeals affirmed Petitioner's convictions and sentence. It concluded that Petitioner's claim regarding a knowing and intelligent waiver of counsel had not been preserved for review because it was not the same claim he presented in his motion for new trial. Even if the claim had been preserved, the appellate court noted that the motion for new trial was insufficient because it was not verified or supported by an affidavit. The Court of Criminal Appeals also denied relief on Petitioner's ineffective assistance of counsel claim, noting again that his motion for new trial was neither verified nor supported by an affidavit, and that the grounds for relief were not evident from the motion because Petitioner challenged the effectiveness of all three attorneys who had been appointed by the trial court.[3] Citing *Strickland v. Washington*, 466 U.S. 668 1(1994),

---

[2]The trial court appointed new counsel to represent Petitioner on appeal. (*Doc. No. 40, Exh. A.*)

[3]The trial court appointed Petitioner three different attorneys during the course of his criminal proceedings. Two requested that they be allowed to withdraw from representation of Petitioner prior to trial. (*Doc. No. 40, Exh. A.*)

the appellate court further concluded that Petitioner had failed to identify any specific deficiency in counsel's performance or the way he was prejudiced by such deficiency. Petitioner took no further action on his appeal and the appellate court issued a certificate of judgment on March 15, 2006. (*Doc. No. 40, Exhs. C, D.*)

Petitioner filed a Rule 32 petition on March 7, 2007, raising several grounds for relief. The trial court summarily denied the petition on May 26, 2009. On appeal, the State requested a remand for further proceedings on Petitioner's allegation that the trial court failed to hold a *Faretta* colloquy and/or comply with Rule 6.1, A.R.Crim.P., to determine whether Petitioner wished to recant his decision to represent himself, and proceed to trial as co-counsel with his appointed attorney as lead counsel, before the court compelled him into hybrid representation and violated his right to self-representation. (*See Doc. No. 40, Exh. E at pg. 18.*) The appellate court issued an order on December 4, 2009, remanding the case to the trial court for further proceedings and directing the trial court to make specific findings of fact on several of the claims raised by Petitioner.

Following an evidentiary hearing held on June 4, 2010, the trial court denied the petition. On return to remand the Alabama Court of Criminal Appeals entered an order on July 23, 2010, denying the Rule 32 petition, but withdrew the opinion on August 11, 2010, after noting that a motion to supplement the record filed by Petitioner was still pending. The appellate court subsequently denied Petitioner's Rule 32 petition on September 3, 2010. After Petitioner's application for rehearing was overruled he filed a petition for writ of

certiorari with the Alabama Supreme Court on October 12, 2010.  The Alabama Supreme Court denied Petitioner's request for certiorari review on January 7, 2011. The Alabama Court of Criminal Appeals issued a certificate of judgment the same day. (*Doc. No. 40, Exhs. E-N*.)

In the instant petition, Petitioner presents the following claims for relief:

1.  He was denied his constitutional right to self-representation because the trial court compelled "a hybrid representation";

2.  He was denied his right to a fair trial because the prosecution suppressed evidence with which Petitioner could have impeached witnesses;

3. Appellate counsel was constitutionally ineffective for not raising Petitioner's self-representation and suppression claims on direct appeal in an appropriate manner; and

4.  The state courts' denial of Petitioner's post-conviction petition denied him his constitutional right to equal protection.

(*Doc. Nos. 1, 24*.)

Respondents maintain that Petitioner's claim that the state court's denial of his post-conviction petition violated his right to equal protection is unexhausted because he did not present the claim first in state court. Because Petitioner cannot return to state court to exhaust the claim, however, Respondents further assert that the claim is procedurally defaulted as Petitioner failed to present the claim to the state courts in accordance with the state's procedural rules.  *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Smith v. Jones*, 256 F.3d 1135, 1140-1146 (11th Cir. 2001); *Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002); *Holladay v. Haley*, 209 F.3d 1243, 1254 n. 9 (11th Cir. 2000); *Bailey v. Nagle*, 172 F.3d 1299,

1303 (11ᵗʰ Cir. 1999); *Collier v. Jones*, 901 F.2d 770, 773 (11ᵗʰ Cir. 1990); *Teague v. Lane*, 489 U.S. 288 (1989).  Respondents also maintain that the remaining three claims raised in the instant habeas petition entitle plaintiff to no relief, as the state courts properly adjudicated such claims on the merits during Petitioner's post-conviction proceedings. *Price v. Vincent*, 538 U.S. 634, 638, 123 S.Ct. 1848, 1852 (2003) ("A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)."); *Williams v. Taylor*, 529 U.S. 362, 402 (2000).

## II.  DISCUSSION

### A.  The Faretta Claim

Petitioner maintains that the trial court violated his "right to self-representation by compelling him into a hybrid representation and denying him the free choice to choose counsel or self-representation."  In support of this allegation, Petitioner asserts that at the onset of trial his court-appointed counsel filed a motion to withdraw in order to allow Petitioner to proceed *pro se*, and Petitioner also offered the trial judge his request to proceed *pro se,* "further invoking the right to self-representation."  The trial court advised Petitioner that he would be allowed to represent himself, but asked appointed counsel to remain during the trial. Petitioner asserts that the trial court stated to him that he would be allowed to participate in his representation, but during the parties' introductory remarks to the jury the trial court directed standby counsel to introduce himself, during which time counsel referred to Petitioner as his client. When Petitioner asked if he could also give information, the trial

court requested a sidebar with the prosecutor and standby counsel. Following the sidebar, Petitioner claims that the trial court resumed his remarks to the jury without answering Petitioner's question or explaining to him his rights "in the court imposed hybrid defense," nor did he inform Petitioner what was discussed at the sidebar.

Petitioner maintains that a second sidebar to which he again was not privy was conducted during the trial, and he also was not informed of the purpose of the sidebar. Petitioner also asserts that the trial judge held a private discussion with standby counsel at a point in the trial when the jury was not present, and speculates that the conversation concerned Petitioner's pleading guilty to lesser included offenses. In sum, Petitioner complains that during the course of trial, standby counsel was allowed to infringe on his right to self-representation at will, and the trial court compelled Petitioner into a hybrid representation with standby counsel acting as lead counsel. Petitioner claims that this violated his right to self-representation and to choose counsel or self-representation freely, and that the trial court also failed to hold a colloquy and/or explain to him his rights in the "court imposed hybrid representation." (*Doc. No.1, pgs. 16-17.*)

Petitioner presented this issue in his Rule 32 proceedings. On appeal from the denial of his post-conviction petition, the Alabama Court of Criminal Appeals held as follows:

> Greer alleges the circuit court abused its discretion by failing to hold a colloquy pursuant to Faretta v. California, 422 U.S. 806  (1975) and Rule 6.1(b), Ala. R. Crim. P.
>
> > "Rule 6.1(b), Ala. R.Crim. P., provides a framework to ensure that a defendant's waiver of counsel is knowing and intelligent. The rule

provides in pertinent part as follows:

> " 'A defendant may waive his or her right to counsel in writing or on the record, after the court has ascertained that the defendant knowingly, intelligently, and voluntarily desires to forgo that right. At the time of accepting a defendant's waiver of the right to counsel, the court shall inform the defendant that the waiver may be withdrawn and counsel appointed or retained [FN3] at any stage of the proceedings .... '

> "In addition to Rule 6.1, Alabama caselaw has discussed the duties of the trial court throughout criminal proceedings to ensure that a defendant fully understands his right to counsel and the consequences of waiving that right.

>> " ' "In <u>Faretta v. California</u>, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975), the Supreme Court held that a defendant has a Sixth Amendment right to represent himself in a criminal case. In order to conduct his own defense, the defendant must 'knowingly' and 'intelligently' waive his right to counsel, because in representing himself he is relinquishing many of the benefits associated with the right to counsel. <u>Faretta</u>, 422 U.S. at 835. The defendant 'should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." ' <u>Faretta</u>, 422 U.S. at 835 (other citations omitted)." '

> "<u>Baker v. State</u>, 933 So.2d 406, 408-411 (Ala. Crim. App. 2005) ."

<u>Woodruff v. City of Pelham</u>, 1 So. 3d 157, 160 (Ala. Crim. App. 2008) .

The record reveals the circuit court discussed with Greer the matters set forth in Rule 6.1(b), Ala. R. Crim. P. Moreover, Greer stated at the evidentiary hearing his complaint was that his standby counsel was too involved, not that his decision to represent himself was involuntary. Specifically, Greer argued that he was "compelled to hybrid representation." (C. 79-80). However, Greer conceded that he selected the jury, made his own opening statement, cross-examined the State's witnesses, called and examined his own witnesses, and made his own closing argument. As such, it is clear that Greer's waiver of

counsel was knowingly and intelligently entered and that standby counsel allowed Greer to try his own case as he desired. Thus, Greer failed to meet his burden to prove this claim by a preponderance of the evidence, and the circuit court correctly denied relief. Ala. R. Crim. P. 32.3.

_____

[FN3] Greer represented himself with standby counsel during the trial.

(*Doc. No. 40, Exh. K, pgs. 5-7.*)

The appellate court concluded that "[t]he record reveals the circuit court discussed

with Greer the matters set forth in Rule 6.1(b), Ala. R. Crim. P." (*Doc. No. 40, Exh. K at*

*pg. 6.*) The extent of that discussion was as follows:

> THE COURT: *State versus Jerome Greer.* The case of S*tate versus Jerome Greer* has been called. What says the State?
>
> MR. GIBBS: State's ready.
>
> THE COURT: What says the defense?
>
> MR. LETFORD: I have a Motion to Withdraw as counsel so he may proceed pro se.
>
> MR. JEROME GREER: I would like to submit this honorable motion to the court.
>
> THE COURT: Mr. Greer, I'll allow you to represent yourself; but I'm going to ask that Mr. Letford remain in during the course of the trial. You'll be allowed to participate in your representation.

(VENIRE PANEL PRESENT)

> THE COURT: Now, first, I'm going to need for all of you on the jury panel to stand and raise your right hands.

(WHEREUPON, THE PANEL WAS SWORN.)

(*See Doc. No. 40, Exh. A, Part 2, pg. 14 of 95.*)

The appellate court further concluded Petitioner's real claim was that "his standby counsel was too involved, not that his decision to represent himself was involuntary." (*Doc. No. 40, Exh. K at pg. 6.*)

To prevail on a § 2254 claim adjudicated on the merits by the state courts, Petitioner must show that the decision by the Alabama state courts was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts, in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(1) & (2);[4] *see Williams*, 529 U.S. at 412-13. A state court's decision can be "contrary to" federal law either (1) if it fails to apply the correct controlling authority, or (2) if it applies the controlling authority to a case involving facts "materially indistinguishable" from those in a controlling case, but nonetheless reaches a different result. *Id.* at 405-06. A state court's decision can involve an "unreasonable application" of federal law if it either (1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively

_____

[4]28 U.S.C. § 2254(d) provides that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim adjudicated on the merits in State court proceedings unless the adjudication of the claim:

(1)      resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or

(2)      resulted in a decision based on an unreasonable determination of the facts, in light of the evidence presented in the State court proceedings.

unreasonable, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Id*. at 407. "Federal habeas relief is available under the 'unreasonable application' standard only if the state court's application of clearly established federal law was 'objectively unreasonable.'" *Parker v. Head*, 244 F.3d 831 (11th Cir. 2001) (*citing Williams*, 529 U.S. at 409). It is the objective reasonableness, not the correctness *per se*, of the state court decision that this court must decide. *See Williams*, 529 U.S. at 411; *Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001).

Federal district courts are likewise directed to determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A responsible, thoughtful decision that is made after a full opportunity to litigate suffices, "even if it is wrong." *Lindh v. Murphy*, 96 F.3d 856, 876-77 (7th Cir. 1996), *rev'd on other grounds*, 521 U.S. 320 (1997). A state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "However, the statutory presumption of correctness applies only to findings of fact made by the state court, not to mixed determinations of law and fact." *Parker*, 244 F.3d at 835 (*citing McBride v. Sharpe*, 25 F.3d 962, 971 (11th Cir. 1994)). However, even when the state court addresses a question of law, this court is not authorized "to evaluate [a petitioner's] claim *de novo* rather than through the lens of § 2254(d)." *Price*, 538 U.S. at 639. The Supreme Court admonishes that such

evaluation "exceeds the limits imposed on federal habeas review by 28 U.S.C. § 2254(d). . . . " *Id*. at 636. Additionally, a state court's summary rejection of a federal constitutional issue qualifies as an adjudication on the merits under § 2254(d) so that the summary rejection is entitled to the same deference as a written opinion. *See Wright v. Sec. of Dept. Of Corr.,* 278 F.3d 1245, 1254 (11th Cir. 2002).

In *Harrington v. Richter,* __U.S. __, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the United States Supreme Court again articulated the well-known standard of deference that federal habeas courts must apply to the determinations of state courts in a federal habeas proceeding noting:

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 786–87.

It is well established that the Sixth Amendment guarantees a criminal defendant the right to counsel and the right to dispense with that counsel. *See Faretta*, 422 U.S. at 819. A

criminal defendant may proceed *pro se* where the trial court has determined that his waiver of counsel is "knowing, voluntary, and intelligent." *Iowa v. Tovar*, 541 U.S. 77, 88 (2004). When determining whether there has been an intelligent waiver of rights, a court must look to "the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused," *Johnson v. Zerbst ,* 304 U.S. 458, 464 (1938), and the "complex or easily grasped nature of the charges." *Tovar,* 541 U.S. at 88 (citing *Zerbst,* 304 U.S. at 464). "[C]ourts must indulge every reasonable presumption against waiver of fundamental constitutional rights." *Zerbst,* 304 U.S. at 464 (internal quotations and citation omitted). The Supreme Court, however, has never "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." *Tovar,* 541 U.S. at 88.

In this case, Petitioner does not contend that his waiver of his Sixth Amendment right to counsel was not made knowingly, intelligently or voluntarily.[5] *See Tovar*, 541 U.S. at 92

---

[5] Had he made such a contention, it is clear that neither *Faretta* nor *Tovar* requires a state court to warn a defendant regarding self-representation in any particular way or through the use of any specific formula. *See United States v. Davis*, 269 F.3d 514, 518-19 (5th Cir. 2001) (noting that although court "has consistently required . . . *Faretta* warnings," there is "no sacrosanct litany for warning defendants against waiving the right to counsel," and district courts must exercise discretion "[d]epending on the circumstances of the individual case"); *see also North Carolina v. Butler*, 441 U.S. 369, 374-76 (1979) (declining to replace totality of circumstances standard for assessing knowing and voluntary waiver of right to counsel with an "inflexible per se rule" requiring such waivers always to be explicit); *Nelson v. Alabama*, 292 F.3d 1291, 1295 (11th Cir. 2002) (failure to hold *Faretta* hearing is not error as a matter of law; if trial record shows defendant knowingly and voluntarily elected to represent himself, *Faretta* standard is satisfied); *United States v. Johnson,* 534 F.3d 690, 694 (7th Cir. 2008) (holding that the trial court's failure to inform a defendant of the disadvantages of proceeding *pro se* was "not fatal, for the ultimate question is not what was said or not said to the defendant but rather whether he in fact made a knowing and informed waiver of counsel").

(Petitioner acknowledged that on a collateral attack of an uncounseled conviction "it is the defendant's burden to prove that he did not competently and intelligently waive his right to the assistance of counsel."). Rather, Petitioner maintains that had the trial judge fulfilled his duty by holding a colloquy, the record would have reflected that Petitioner "desired to have full control over his case and did not desire [appointed counsel] to have anything to do with his case." (*Doc. No. 58 at pg. 15*.) Consequently, the heart of Petitioner's claim does not go to whether he "clearly and unequivocally" waived his right to counsel in accordance with the requirements of the Sixth Amendment, but whether his desire for self-representation without any assistance from standby counsel was violated at his trial. *See Faretta*, 422 U.S. at 835. Petitioner alleges that the trial court improperly allowed standby counsel to infringe upon his right to self-representation "at will," thereby effectively usurping his right under the Sixth Amendment to proceed *pro se*. In this regard, he faults the trial court for failing to hold a colloquy and/or explain to him his rights in relation to what he contends amounted to "court

---

Citing *Faretta*, the Alabama Court of Criminal Appeals concluded that the circumstances under which Petitioner made his decision to waive counsel did not violate the Constitution, thereby implicitly concluding that Petitioner made known his unequivocal desire to conduct his own defense and did not unwittingly stumble down the path of self-representation. Consequently, Petitioner would fail to establish under the "contrary to" clause of § 2254(d)(1) that the Alabama Court of Criminal Appeals applied a rule that contradicts the governing law as set forth in Supreme Court case law, or that the state court decided the case differently from the way the Supreme Court did in a previous case presenting a set of materially indistinguishable facts. Likewise, Petitioner would not be able to establish under the "unreasonable application" clause that the appellate court acted unreasonably in determining that he validly waived the right to counsel, nor has he shown that the Alabama Court of Criminal Appeals's decision in this regard involved an unreasonable application of *Faretta*. Moreover, Petitioner would not be able to demonstrate that the decision of the Alabama Court of Criminal Appeals was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

-13-

imposed hybrid representation." *See McKaskle v. Wiggins*, 465 U.S. 168 (1984).

"A defendant's Sixth Amendment rights are not violated when a trial judge appoints standby counsel—even over the defendant's objection—to relieve the judge of the need to explain and enforce basic rules of courtroom protocol or to assist the defendant in overcoming routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals. Participation by counsel to steer a defendant through the basic procedures of trial is permissible even in the unlikely event that it somewhat undermines the *pro se* defendant's appearance of control over his own defense." *McKaskle,* 465 U.S. at 184. Thus, standby counsel's mere presence during the trial proceedings, in and of itself, did not amount to a violation of Petitioner's Sixth Amendment right.

In considering whether the actions of the trial court led to undue interference by standby counsel with regard to Petitioner's desire to present his own defense, the court first determines whether "standby counsel's participation ... effectively allow[ed] counsel to make or substantially interfere with any significant tactical decisions, or to control the questioning of witnesses, or to speak *instead* of the defendant on any matter of importance." *McKaskle,* 465 U.S. at 178 (emphasis in original). Second, the court considers whether counsel's participation was "allowed to destroy the jury's perception that the defendant is representing himself." *Id*. With regard to the first component, which goes to "the core of the *Faretta* right," *id.,* a defendant must "be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question

-14-

witnesses, and to address the court and the jury at appropriate points in the trial." *Id*. at 174. There is, however, no "absolute bar on standby counsel's unsolicited participation" at trial. *Id.* at 176. Rather, the Sixth Amendment requires only that "the defendant had a fair chance to present his case in his own way." *Id.* at 177.

In support of his claim of improper interference by standby counsel, Petitioner asserts that "the first incident occurred when [the trial court] turned the defense over to [standby counsel] who[] wasn't supposed to have anything to say or do in [Petitioner's] representation." Next, prior to jury selection but while the jury panel was present, the trial court requested standby counsel to approach the bench for a sidebar. Petitioner asserts that he had no knowledge of what was discussed at this sidebar, nor was its purpose ever explained to him. During the course of the trial, Petitioner states that standby counsel interposed an objection during questioning of a witness and that a second sidebar occurred between the trial judge and standby counsel. Again, Petitioner claims he was not made aware of the content or purpose of the sidebar. Finally, Petitioner asserts that the trial judge and standby counsel engaged in a private discussion at a time when the court was in recess.[6] Petitioner maintains that these exchanges between the trial court and standby counsel "clearly show that his right to self-representation was totally destroyed." (*Doc. No. 58 at pgs. 14-18.*)

---

[6]According to the transcript of Petitioner's Rule 32 hearing, the trial court stated that the exhibit submitted in support of this alleged instance of standby counsel's interference concerned a charge conference where the trial judge decides on the appropriate charge to give the jury. (*Doc. No. 40, Exh. J at pgs. 119-120 of 200.*)

As explained, the Alabama Court of Criminal Appeals determined that Petitioner admitted that he selected his jury and that he made his own opening statement, cross-examined the State's witnesses, called and examined his own witness, and made his own closing argument. As a result, the appellate court concluded that Petitioner had been allowed to try his own case as he wished. Upon its own independent review, the court finds that the record supports the appellate court's determination. (*See Doc. No. 40 Exhs. A, J.*) The evidence before the court does not show that either the trial court or standby counsel engaged in conduct which substantially interfered with Petitioner's desire to proceed *pro se,* nor do Petitioner's examples in support of his interference claim establish that the defendant did not effectively have a fair chance to present his case in his own way. The record does not reflect much participation by standby counsel at all, other than the few instances cited by Petitioner. It leaves no doubt that Petitioner controlled the "organization and content of his own defense" and presented that defense to the jury himself. *McKaskle,* 465 U.S. at 174. Thus, Petitioner has not shown that the Alabama Court of Criminal Appeals's conclusion that the core concerns of *Faretta* were not violated during his trial was either contrary to, or an unreasonable application of governing Supreme Court precedent.  *See Faretta*, 422 U.S. at 835. Moreover, based on the pleadings, documents, and records filed herein, Petitioner has not established that the decision of the Alabama Court of Criminal Appeals was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. This court must presume as correct the determinations of all factual issues made

by the state court. 28 U.S.C. § 2254(e). Petitioner has not rebutted that presumption of correctness by clear and convincing evidence. Therefore, his request for habeas relief on the basis of this claim is due to be denied.

B.   The Brady Claim

Petitioner argues that the prosecution violated his right to a fair trial by suppressing evidence favorable to him which he could have used for impeachment purposes. The evidence Petitioner maintains the State withheld included all photos taken at the crime scene, the Alabama incident report, a statement by witness Chadwick Foster (a minor in the house at the time of the shootings), and a witness list. Because Petitioner's defense at trial was an alibi defense, he contends that had he been provided this discovery material he would have been able to show that witness Foster gave perjured testimony and that the State would not have been able to refute his alibi defense. (*Doc. Nos. 1, 58*.)

The Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83, 87 (1963), mandates that prosecutors must turn over exculpatory and impeachment evidence where such evidence is material either to guilt or punishment. "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999).

On appeal from the denial of Petitioner's post-conviction petition, the Alabama Court

of Criminal Appeals concluded that the state court had correctly determined that Petitioner

failed to meet his burden of proof on his *Brady* claim. The court specifically found:

> Here, every witness Greer called confirmed his guilt and stated they did not
> give any written statements to the State that were favorable to him. Greer's trial
> attorney testified that he received all the written documents and pictures that
> the State possessed prior to trial. Thus, Greer failed to present evidence that
> established his <u>Brady</u> claim. Because Greer failed to meet his burden to prove
> his claim by a preponderance of the evidence, the circuit court correctly denied
> relief. Ala. R. Crim. 32.3.

(*Doc. No. 40, Exh. K at pg. 7.*)

Support for the appellate court's decision is found in the record of the Rule 32

proceeding. The court notes that during Petitioner's questioning of his brother, the following

exchange occurred:

> THE COURT: His [Michael Greer's] testimony at trial is not relevant to what
> we are doing here today. You are asking -- your Rule 32 is based on the fact
> you said the State suppressed evidence. They have already admitted that they
> did not give you the Alabama Uniform Incident Report, which by rules of
> discovery, they do not have to. Then if you have no other -- have you got a
> statement, besides the IO, that Mr. Greer gave? Do you have any copies of
> statements where he gave a statement?
>
> MR. GREER: No, sir.
>
> THE COURT: So there is no statement out there that they should have given
> you that you didn't receive. They didn't produce one at trial, did they, and try
> to admit?
>
> MR. GREER: No, sir.
>
> THE COURT: Ask your next question.
>
> MR. GREER: He is saying he did give statements.

THE COURT: He said he told the officer what happened, and the officer wrote it in an IO report.

Q. You say you didn't talk to Mr. Crayton?

A. Not that I remember.

Q. What was the statement you gave – you see, I'm knowing that you gave – when you telling them some of this is supposed to be written down.

A. I will tell you what I told them, if you want to know that.

Q. I'm trying to find out who did you talk to?

A. I talked to the officer that is out there now.

Q.  Right.

Q. Because he was the first one that came out after the incident. That's who I talked to.

THE COURT: Mr. Greer, what did you tell him happened? Tell us briefly.

THE WITNESS:· I told him that Jerome had shot through my house. He asked me how I knew that. I said because that's my brother.

THE COURT: You saw him doing it?

THE WITNESS: I saw him doing it.

THE COURT: Is there any question that that's the man who shot through your house and shot the vehicle?

THE WITNESS: No.

(*Doc. No. 40 Exh. J, pgs. 157-59.*)

Petitioner argues that had the State produced the documents in question (the Alabama

Incident Report and the minor's statement given at the Macon County Sheriff's Office a few

days after the incident) prior to trial he could have properly cross-examined the witnesses to the incident which would have  shown that the content of the two statements contradicted each other, and such documents also could have been used to impeach the witnesses and demonstrated that they committed perjury through their trial testimony. (*Doc. No. 58.*) Testimony elicited during the Rule 32 hearing, however, further revealed the following:

> A. Like I [Michael Greer] told you in court, I can't say exactly when [the minor] came out of the house because I was cutting grass. When I went 1 outside to cut grass, he was inside playing video games. At what point he came out of the house, I can't tell you because I wasn't paying attention. I told you that in court.

> THE COURT: Have you closely read [the minor's] statement?

> MR. GREER: [The minor] didn't do a statement, Your Honor.

> THE COURT: His statement on  5/1[8]/04, I was at home in my room playing a  game when I heard gunshots. I ran outside out the house into my stepfather's 8-wheeler. So it's not contradictory. He  is saying I was in the house when you shot.

> MR. GREER: With no disrespect, Your Honor, I didn't get a chance to finish questioning [the minor], so I don't get a chance to question him about his statement and  contradicting.

> THE COURT: It doesn't contradict. It's the same. Both said that he was in the house when the shooting occurred.

> MR. GREER: The other one said he left the house and ran.

> HE COURT: He heard the gunshots first. There is no contradiction, Mr. Greer. Even if there is, a jury heard this. They heard the testimony. You have still not come up with any statements that you were not provided.

> MR. GREER: These were suppressed.

THE COURT: I am telling you again that that's an incident report. They did not have to provide that as part of discovery. Do you understand that? Rule 16 is they do not have to provide that. Do you understand that? They have to provide anything that is exculpatory. These are far from exculpatory. All these say that you shot at them.

MR. GREER: Explain to me then. Maybe I don't understand what exculpatory means. I was understanding it is evidence that tends to prove your innocence or your guilt.

THE COURT: If it proves your guilt, it is not exculpatory.

MR. GREER: What I'm saying is they suppressed these statements. One statement says he is in. Then, Your Honor, let's use logic and reason –

THE COURT: We get to all the arguments at the end, Mr. Greer. Do you have anymore questions for your brother?

Q. So you already said you didn't know whether or not [the minor] actually came out of the house or not?

A. He came out of the house because after he called the police, he had the house phone in his hand. When he called the  police and they answered the phone, he hung up. They called back. He handed me the house phone out of the truck so I know he was in the house because he gave me the house phone, not my cell phone. My cell phone was in the  truck. He came out of the house with the house phone. So I know from that right there, he had to be in the house because he had the house phone, not my cell phone because I never take my cell phone out of the truck.

(*Doc. No. 40, Exh. J at pgs. 162-65.*)

Having reviewed documents, records and other pleadings filed herein, the court finds no support for Petitioner's argument that the State failed to disclose exculpatory or impeaching documents and/or statements for several reasons. First, as the state court explained, the Alabama Incident Report is not admissible as evidence.  *See* Ala. Code § 12-

-21-

21-3.1.  During the Rule 32 hearing, standby counsel stated  that he believed he had received copies of all discoverable material from the State. Nonetheless, neither the Alabama Incident Report prepared by the police officer who first responded to the scene nor the statement of the minor taken by law enforcement official (Investigator Crayton) a few days following the incident were exculpatory by any reasonable interpretation. Rather, the information contained therein had  one tendency only –to implicate the Petitioner as the perpetrator. Inconsistencies, if any, between the witnesses's statements and their trial testimony were minor and immaterial. Finally, as the Rule 32 court noted based on the testimony presented at the Rule 32 hearing, "there w[ere] no [admissible documents or] statement[s] evidently admitted at trial that [Petitioner] said [he] w[asn't] given [prior to trial]." (*Doc. No. 40, Exh. J at pg. 160*.)

Based on the evidence of record, Petitioner has not shown that the Alabama Court of Criminal Appeals'  rejection on the merits of Petitioner's *Brady* claim was either (1) contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented in  Petitioner's post-conviction proceeding. Petitioner's request for habeas relief on this claim is, therefore, due to be denied under § 2254(d)(1).

## C.  Ineffective Assistance of Appellate Counsel

Whether Petitioner received ineffective assistance of appellate counsel is a mixed

question of law and fact governed by 28 U.S.C. § 2254(d). *See Strickland v. Washington*, 466 U.S. 668, 698 (1984). Accordingly, this court may reverse a state court's decision denying relief on a claim of ineffective assistance of appellate counsel if the state court's decision is "contrary to, or involve[s] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). In making its decision, the court must first consider whether the state court committed error and, then, whether any error involved an objectively unreasonable application of controlling law within the meaning of § 2254(d). *See Weeks v. Angelone*, 528 U.S. 225 (2000); *cf. Wilson v. Layne*, 526 U.S. 603, 609 (1999) (in qualified immunity cases, courts should address whether a law was violated prior to determining whether it was clearly established).

On an ineffective assistance of counsel claim a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U. S. at 687-94. A criminal defendant's right to effective assistance of counsel continues through a direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Ineffective assistance of appellate counsel may be shown if a petitioner can "establish ... that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.... Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective

assistance of counsel be overcome." *Mayo v. Henderson*, 13 F.3d 528, 533 (2nd Cir.1994). However, a criminal petitioner has not necessarily received ineffective assistance when his counsel fails to present every non-frivolous issue on appeal. An attorney may decline to appeal a non-frivolous issue if appealing a weak issue would have the effect of diluting stronger arguments on appeal. *See Jones v. Barnes*, 463 U.S. 745, 752 (1983).

Petitioner presented his ineffective assistance of appellate counsel claims raised in the instant habeas application in his Rule 32 petition. On appeal from the lower court's denial of the petition, the Alabama Court of Criminal Appeals, citing *Strickland*, found that the record supported the circuit court's determination that Petitioner's ineffectiveness claims lacked merit, and concluded that Petitioner had, therefore, not met his burden of establishing counsel's ineffectiveness. (*Doc. No. 40, Exh. K at pgs. 4-5*.) The state courts did not decide Petitioner's claim of ineffective assistance of counsel "differently than [the Supreme] Court has [in a case based] on a set a of materially indistinguishable facts" nor did the state court apply a rule that contradicts governing federal law. *Williams*, 362 U.S. at 412. Consequently, the state appellate court's rejection of the ineffective assistance of counsel claim was not contrary to actual Supreme Court decisions. This court must, therefore, determine whether the Alabama Court of Criminal Appeal's decision to reject the ineffective assistance of appellate counsel claim was an unreasonable application of the *Strickland* standard. *See Williams*, 529 U.S. at 411.

Petitioner argues that appellate counsel rendered deficient representation for failing

to preserve his *Faretta* and *Brady* claims for review on direct appeal. Petitioner complains that, as a result of this allegedly deficient performance, the appeal of his convictions was affirmed on the ground that the issues were not preserved for review which denied him "a direct appeal as a whole." Had appellate counsel performed in a professional manner and possessed the knowledge of how to preserve his *Faretta* and *Brady* claims for direct appeal, Petitioner contends he would have prevailed on appeal and his convictions would have been overturned. (*Doc. No. 58 at pgs. 21-22.*)

The arguments that Petitioner asserts his appellate counsel should have made on appeal are the same claims he presented in his Rule 32 petition and the instant habeas petition, and for the reasons previously explained, are without merit. Counsel, therefore, cannot be faulted for having chosen not to make them. Moreover, Petitioner has not shown that he was prejudiced by the omission of these arguments on direct appeal, especially in light of the fact that he presented these arguments in his *pro se* post-conviction proceeding. Further, the state courts denied Petitioner's *Faretta* and *Brady* claims on the merits.

Based on the foregoing, the state court's rejection of Petitioner' ineffective assistance of appellate counsel claim was objectively reasonable. *See Williams v. Taylor, supra.* This decision was likewise a reasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2). Consequently, Petitioner is not entitled to habeas relief on this claim.

*D. Procedural Default*

In his amended petition, Petitioner contends that the Alabama Supreme Court denied him equal protection when it issued a no opinion ruling on appeal from the denial of his Rule 32 petition. In support of his claim Petitioner references various issues which occurred during his Rule 32 evidentiary hearing and during his appeal of his post-conviction proceedings and claims that the Alabama Supreme Court's no opinion judgment "turn[ed] a blind eye" to all the violations of his constitutional rights. (*Doc. No. 24*.)  As explained, Respondents maintain that this claim is procedurally defaulted as Petitioner failed to present it to the state courts in accordance with the state's procedural rules.  *O'Sullivan*, 526 U.S. 838; *Brownlee*, 306 F.3d at 1065; *Collier v. Jones*, 901 F.2d at 773.   This court may reach the merits of Petitioner's procedurally defaulted claim only if he shows either (1) cause for the procedural default and actual prejudice arising out of the violation of federal law, *Coleman v. Thompson*, 501 U.S. 722 (1991), or  (2) a resulting fundamental miscarriage of justice if the federal court does not consider the merits of the claims.  *Schlup v. Delo*, 513 U.S. 298, 320 (1995).

The court afforded Petitioner an opportunity to demonstrate the existence of cause for his failure to raise his claim in the state courts properly and prejudice resulting from this failure.  In an effort to meet his burden of establishing cause and prejudice or a miscarriage of justice, Petitioner alleges that the arbitrary and capricious conduct and actions of the judges who presided over his  post-conviction proceedings resulted in manifest injustice requiring that his convictions be vacated.  (*Doc. No. 58*.)  Petitioner's contention, however, demonstrates neither cause for his failure to present the claim considered defaulted to the

state courts in compliance with applicable procedural rules nor the existence of actual prejudice emanating from infringement of federal law.

"If petitioner cannot show cause, the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim." *McCleskey v. Zant,* 499 U.S. 467, 494-95 (1991). The miscarriage of justice standard is directly linked to innocence. *Schlup*, 513 U.S. at 321. Innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted. *Id.* at 315. This exception applies where a petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 327 (*citing Murray v. Carrier*, 477 U.S. at 496). "To establish actual innocence, [Petitioner] must demonstrate that . . . 'it is more likely than not that no reasonable juror would have convicted him.'" *Bousley v. United States,* 523 U.S. 614, 623 (1998) (*citing Schlup*, 513 U.S. at 327-328). "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Id.* at 623-624 (*citing Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).

*Schlup* observes that

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. . . . To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not

presented at trial.

*Id*. at 324.

Petitioner fails to make the requisite showing.  Petitioner presents no evidence nor suggests that any exists which could satisfy the difficult standard set forth in *Schlup*. Petitioner's procedurally defaulted claims are, therefore, foreclosed from federal habeas review.[7]

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the petition for habeas corpus relief filed by Petitioner Jerome Greer-El be DENIED and DISMISSED with prejudice.

It is further

ORDERED that on or before **September 19, 2013,** the parties may file an objection to the Recommendation. Any objection filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party  objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that

---

[7]Even if Petitioner's claim were not defaulted it does not warrant federal habeas relief. The law is settled in the Eleventh Circuit that a § 2254 proceeding is not an appropriate forum for a prisoner who wishes to challenge the process afforded him in state post-conviction proceedings. This is so because such a claim represents an attack on a proceeding collateral to the prisoner's confinement and not the confinement itself. *Quince v. Crosby,* 360 F.3d 1259, 1261-62 (11th Cir. 2004) (affirming district court's denial of habeas relief based on state court judge's refusal to recuse himself from the [post-conviction] hearing, explaining "while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief."); *Spradley v. Dugger,* 825 F.2d 1566, 1568 (11th Cir. 1987) (*per curiam*) (concluding that § 2254 claim that petitioner's due process rights were violated when state post-conviction court held no evidentiary hearing and failed to attach appropriate portions of record to its opinion "goes to issues unrelated to the cause of petitioner's detention [and] does not state a basis for habeas relief.").

this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this 9th day of September, 2013.


/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE